Gertrude Cockrell, Plaintiff-Appellee, v. Casper Sullivan, Defendant-Appellant.

Gen. No. 9,760.

Opinion filed November 6, 1951.
Released for publication December 3, 1951.

JENKINS, OLSEN & CANTRILL, all of Springfield, for appellant.

ROSCOE BONJEAN, and MAURICE KEPNER, both of Springfield, for appellee.

MR. JUSTICE WHEAT delivered the opinion of the court.

Defendant Casper Sullivan, appeals from a judgment for $269.80 in favor of plaintiff Gertrude Cockrell, entered by the circuit court of Sangamon county on a jury verdict for damages resulting from a collision of plaintiff's automobile with that of defendant, the latter being driven by a thief at the time.

The facts seem undisputed. When defendant's car was stolen on January 17, 1950, in Springfield, Illinois, the key was in the ignition switch, having been left there by defendant in violation of paragraph 189 of chapter 95½ of the [1949] Illinois Revised Statutes [Jones Ill. Stats. Ann. 85.221]. That the thief was negligent and plaintiff in the exercise of due care just prior to and at the time of the accident is not controverted. The jury found in answer to a special interrogatory that the thief, who was neither apprehended nor identified, was "in flight" at the time of the collision.

Defendant concedes that on its facts, the instant case is identical with the situation before the First District Appellate Court in the case of *Ostergard v. Frisch*, 333 Ill. App. 359 (1948) where a divided court held the defendant liable. Plaintiff states that her complaint was drafted and her suit tried upon the authority of such case. As in such case, the amount here involved is small, but as was there observed, "the

principle of law involved is of far reaching importance." Because of this and later decisions in other jurisdictions, it is pertinent that the legal principles involved be re-examined.

Liability is predicated here, as in the *Ostergard* case, upon the following provision of the Uniform Traffic Act:

"No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition and removing the key, or when standing upon any perceptible grade, without effectively setting the brake thereon and turning the front wheels to the curb or side of the highway," (Ill. Rev. Stat. 1949, Ch. 95½, Sec. 189a). Section 21, paragraph 118 [Jones Ill. Stats. Ann. 85.150] of the Act makes violation of any of its provisions a misdemeanor, and section 137, paragraph 234 [Jones Ill. Stats. Ann. 85.266] provides certain penalties therefor.

In the majority opinion in the *Ostergard* case the court stated: "The reasoning in *Ross v. Hartman, Shaff v. Claxton, Malloy v. Newman, Maggiore v. Laundry & Dry Cleaning Service,* and *Moran v. Borden Co.,* is sound and should be followed."

██ A complete discussion of these cases is unnecessary because of the excellent analysis in the dissenting opinion of JUSTICE NIEMEYER but the following additional comments seem pertinent. In *Ross v. Hartman* (U. S. C. C. A.), 78 U. S. App. D. C. 217, 139 F. (2d) 14 (followed in *Shaff v. R. W. Claxton, Inc.,* 79 U. S. App. D. C. 207, 144 F. (2d) 532 in the same court) the court stated: "Violation of an ordinance intended to promote safety is negligence. . . . The ordinance is intended to prevent such consequences. Since it is a safety measure, its violation is negligence. . . . Both negligence and causation are too clear in this case, we think, for submission to a jury." The Illinois

rule is to the contrary, to wit: that violation of such a statute or ordinance is not negligence *per se* but is only *prima facie* evidence of negligence. (*Johnson v. Pendergast,* 308 Ill. 255.) (*Stivers v. Black & Co.,* 315 Ill. App. 38.) It is further noted that the views expressed in the case of *Malloy v. Newman,* 310 Mass. 269, cited with approval in the *Ostergard* case, were completely abandoned some seven months after such Illinois decision, in the case of *Galbraith v. Levin,* 323 Mass. 255. In that opinion two cases were principally relied upon by counsel, *Slater v. T. C. Baker Company,* 261 Mass. 424, as authority for the rule that the chain of causation was broken by the act of the thief, and the *Malloy* case holding to the contrary. The court said:

"We are unable to reconcile the rule applied in the majority opinion in the *Malloy* case with that applied in the *Slater v. Baker* case. The time has come when we must choose between them. We prefer the latter. It is in accord with the prevailing view in other jurisdictions."

In the case of *Wannebo v. Gates* (1948), 227 Minn. 194, the court stated: "No court, as far as we know, has held the original actor, who is negligent in leaving his car and ignition switch unlocked and in failing to take the key with him, liable when the tortious act of the thief took place as in our case, some time after the flight was over. . . . What we might hold if the accident had taken place while the thief was in flight from the scene of his crime is of no importance here, if the thief was no longer in flight."

This *dicta* was repudiated by a subsequent decision in *Anderson v. Theisen,* 231 Minn. 369, 43 N. W. (2d) 272 (1950) wherein the court said: "The plaintiff contends that the theft and flight were foreseeable and that, in addition, it could be anticipated, that nervousness or fear of apprehension on the part of the thieves would cause them to drive carelessly and negligently.

. . . It is one thing to say that the ordinance is designed to prevent thefts and quite another to say that it is aimed at preventing negligent driving from the scene of the theft. . . . But for the purpose of this case only, assuming that the violation of the ordinance was negligence, we are of the opinion that the negligent driving of the thieves was the proximate cause of decedent's death, and that the negligence of the defendant, if any, was too remote in the eyes of the law to be regarded as connected as cause therein.''

The majority opinion in the *Ostergard* case contains this statement: ''He must foresee that the thief who steals his car will not be concerned, when fleeing from the scene of the theft, about the rule of care and diligence in driving the car, which a driver is required under the law to exercise.'' This seems contrary to common experience as it would seem reasonable that a car thief, in order to avoid attracting attention and arrest, would be meticulous in observing traffic laws such as speeding, running stop lights, etc. A consideration of the tremendous number of car thefts occurring in the United States each year and the paucity of related cases of the instant type reaching the upper courts would seem to substantiate this view.

■ In the opinion of this court, from an analysis of the cases cited in both the majority and minority opinions in the *Ostergard* case, together with the more recent ones herein discussed, it is believed that the greater weight of authority in Illinois and other jurisdictions, supports the reasoning and conclusion of the dissenting opinion of Justice Niemeyer in the *Ostergard* case. Worthy of repetition is his comment: ''The precautions required by statute . . . are of little effect in reducing automobile thefts. The owner is not required to lock the doors or windows of the car, and the absence of the key in the ignition is only a momentary deterrent to the automobile thief working

with the implements of his trade." The trial court erred in failing to find, as a matter of law, that there was no evidence indicating that defendant could reasonably foresee that harm might result to the property of another by reason of his violation of the statute in question. The judgment of the trial court is reversed.

*Reversed.*